Please be seated. Take number 2-12-01 on the board. We call the State of Illinois plaintiff, Esli Bernascon, Moscow defendant, appellant. Arguing for the appellant, Mr. Dan Evers. Arguing for the appeal, Amy Thompson. Mr. Evers. Good morning, Your Honor. My name is Dan Evers. I'm an assistant defender in the office of the State Appellant Defender in Mount Vernon, Illinois. Is it warmer there? It is warmer there, Your Honor. But, you know, we've had a hard winter. Yes, indeed. I'm representing Mr. Blanco in this case. He was convicted of first-degree murder out of Winnebago County. And we present five issues in the brief. The first is reasonable doubt, and I really don't intend to talk about that much today unless Your Honors have some questions. And the last one is a Batson issue, which I also don't really intend to talk about very much unless Your Honors have some questions. I would like to focus today upon the three new trial, fair trial issues that we raise in the brief, and I will take them in reverse order and start with the fourth issue, which is that Mr. Blanco is denied a fair trial because the court failed to give a tendered defense instruction, defense instruction number 11, concerning IPI number 3.11. The circuit court refused the defense tendered instruction and gave the state's tendered instruction. And the critical part of that instruction that was left out was that it instructed the jury that a witness acknowledged under Oak that he made the statement, that that could be considered by the jury as substantive evidence under Section 115-10.1 of the Code of Criminal Procedure. The substantive evidence that the defense wanted to point to and argue about was that an AutoZone employee by the name of Chamberlain had talked with the police the day after the murder was discovered, or two days after the murder was discovered. And this AutoZone employee, Chamberlain, acknowledged and told the police that on the day of the murder, January 15, 2009, that Mr. Blanco had come into the AutoZone store and had bought a thermostat to put into his Land Rover. And there was evidence later on that this Land Rover was being worked on by Mr. Blanco at an auto repair place, and he was putting in a thermostat on the 16th, the day after the murder was discovered. Did this individual, Mr. Chamberlain, ever acknowledge that he gave the police a statement that he had seen the defendant on January 15th? He gave a statement on January 17th that the defendant was in the AutoZone store purchasing this thermostat. But he didn't say on January 15th. That's what the police officer testified to. And the police officer went and made a police report about that, and the police report reflects that Chamberlain told him that on January 15, 2009, from 2.01 p.m. until 9.19 p.m., that Chamberlain was working, that he remembered that Mr. Blanco came into the AutoZone store and bought this thermostat. Now, the real question is whether he acknowledged it. But does that turn the whole statement into a substantive statement? Didn't the defense attorney acknowledge that it really didn't? No, because he puts forward that this instruction is important for this very important point. And that is that Chamberlain acknowledges that he talked with the police and made these statements or made this statement. The state wants to say, well, he did not go line by line through the statement and say, yes, I made this statement. The question is, how much do you have to acknowledge making this statement? He said that the police came and talked with him. He said that he had a much better what occurred during that statement two days after the occurrence that he had two and a half years later. That is not unsurprising. It's not unsurprising that somebody at a retail store two and a half years later can't remember exactly what occurred on any one day about some kind of transaction that was going on. And so the acknowledgement that he did talk to the police and that he did make a statement to them and that would be as well as he could make it, that that is the facts that he told them about should be acknowledged as the acknowledgement for making the substantive evidence. I just had a question about that. So what if he testifies at trial and says, OK, I remember being interviewed by the police. I can't remember actually the details of what I said, but how detailed does his memory have to his acknowledgement of the prior statement have to be? And I believe that the rule should be that his acknowledgement that he told the police things is enough. Should it be? Yes, I believe that should be the rule. And if it is not the rule that this court should make that the rule, I don't believe that there are any real definitive cases out there that would put that out. Well, you rely on people versus Flores. Can't people versus Flores be distinguished? I mean, that was a complete memory loss, wasn't it? That's right. So that's a little different than what we have here. And we have a memory loss. And two and a half years is a long time. And it's understandable how that can occur. And so a memory loss is different than I'm not sure. I mean, he's now being asked specific dates, times and and really specific things. How is he going to remember those things? That's right. Say, I'm not exactly sure. And so that is why this statute was put into place in order to help the jury with facts that time will cause to lose in memory that people's memory. If he had signed the statement, the whole thing would come in. Right. And so if the rule is that the police get to decide the admissibility of this evidence at the time that they take these statements, I think that's a bad rule. Because all the police officer, if it had been really good facts for the state, for the prosecution, the police officer would have said, would you please sign this? And that would have been admissible. Are you submitting that the police think about this ahead of time? I'm sure they do, Your Honor. They do. Well, I don't see why they do not. At that point in time, were they even aware of all of the facts, the police? Oh, certainly not. But they were focused upon Mr. Blanco at that time, and they were focused enough upon the need to have his timeline put forward in their best light. And that is demonstrated by their going out and getting the videotape of Mr. Blanco buying orange juice at a Walgreens the day, the night before, just to demonstrate that they could place him somewhere and try and tie him with a receipt of that with the shoes that were found. That the state is saying were very important in identifying him as the shooter. I'm going to ask you one more question. Yes, ma'am. I'm going to ask it again because I'm not sure I heard you correctly. Are you submitting that Mr. Chamberlain said he saw the defendant on January 15th? Mr. Chamberlain told the police officer that, and that definitely was Mr. Blanco in his store during a time period that he would have to be cleaning up after a very bloody murder. Well, he didn't say a time. He did not say a time. He just said. So he could have been there at 9 in the morning. No. Mr. Chamberlain told the police officer to the 9 p.m. Basically. Right. 9 9. It could have been there. 8 o'clock. He could have been there at 8 o'clock. This is all the balancing for the jury to decide in determining whether it really was very important and how much weight to give to the evidence. But it does not detract from the idea that Mr. Blanco was here in a retail store after a very bloody murder. And there is nothing on him. And there is not showing that he had just participated in such a bloody murder. Whether the prior testimony was inconsistent with the present testimony, isn't that left to the sound discretion of the trial court? Well, it's inconsistent because he doesn't remember. And so that's why you have to have the police statement. And then after that, that is just like determining whether something is hearsay or not. And as hearsay, the determination of whether something is hearsay, that's reviewed de novo. And we firmly believe that a de novo standard of review should be used in this case. Is that what Flores and Vannoti, I think is the name, another Vannoti that you relied on. Don't they say that it's within the. Yeah, the Drum case. Yeah, the Drum case, that it's within the sound discretion of the trial court. Well, Drum, this court said or the court said that the question whether a statement is recorded within the meaning of the statute or whether the witness is subject to cross examination do not involve the trial court's discretion. And it's not a matter of whether you determine that it's inconsistent within your discretion. It's a matter of it's inconsistent because the defense wanted to present his testimony about this. He had no memory about it, and therefore that's inconsistent. And this is why the statute is used by the parties. Were you going to talk then about the cross examination of the witness? Is that your other issue? Yes. I was next going to move on to the third issue of the brief, whether Mr. Blanco was denied a fair trial by the improper curtailment defense counsel's cross examination of the police officer Speer. Speer had testified that he had gotten some genes that presumably were the defendants that the police officer believed that there was blood on it. And he did a test on it, and it was a presumptive test. And it was positive, and he was questioned. And that positive test turned out to be false, right? And he said, no, it tested positive for the probable presence of blood. But he learned later that it was false, right? And he said yes, and the state objected, and the court sustained that objection. This is something that curtailed the right of the defense to cross examine Speer on what exactly that blood test means. Well, wasn't Speer's testimony hearsay? I mean, Brown is the one that did the test. Brown testified to it. So how is it that Speer's testimony can even come in? And why would you need it? Why did the state want to present it is the real question. The state presented this, and they know it's a presumptive test. It's not a definitive test. Why did the state want to present it? They want to leave in the jury's mind that there's this subtle implication that there was blood found. That was countered, though, when Kia Brown testified, though, the lab analyst, right, that it tested negative for blood. Except during this cross examination, the court is interfering with keeping the jury from learning what exactly is the difference between a presumptive test and a definitive test. Well, either hearsay applies or hearsay doesn't apply, though, right? Well, Speer knows what the limitations of those tests are. But that's not the issue. I mean, either it's hearsay or it's not hearsay, right? Well, it's either blood or it's not. And his knowledge about what it is is the question. Did the defense cross-examine with respect to the difference between presumptive and testing, actual testing of the blood? Are you talking about Speer or Brown? Either one. Defense counsel brings out that Brown said that he could not find blood on this pant leg. Correct. And did he get into with Brown the procedure used in testing this blood? No, Your Honor. Did he get into the procedure used with Speer in testing? No, Your Honor. He just described what the tests were that he did and said that it was negative. The key point, I believe, for this court is to look at your decision in the people versus company cited in our brief in which this court says that on cross-examination, and that is what defense counsel was trying to do with Speer at the time of his cross-examination. He was trying to get across that this is just a presumptive test. It doesn't mean that there's blood. But he didn't ask that question. He asked you later found out it was false, correct? Now, so he had asked the question before the objection comes to that. If he had said what is a presumptive test and he didn't ask that question so we don't know, why would we – we probably wouldn't be having this problem. Well, he then moved on to several other questions and he was told to move on. He tried to get these – this kind of question about what the presumptive test is in, but the court cut him off on the state's objection each time. Are you saying the right to cross-examination trumps an evidentiary rule? Well, you have to look at the right to cross-examine as a constitutional right and the standard of the admission of evidence as within the discretion of the circuit court. But the constitutional right is very important and cutting it off abruptly by the circuit court does cause the jury to look at this and say, well, maybe there was blood there. And it's not just something that is not important. The state put it forward to begin with. It was important to them to put forward that there was this presumptive positive test for blood. And you have to then allow defense counsel to negate that, to destroy it. And when you cut that off, you're just cutting off a constitutional right to present a defense. But he had no first-hand knowledge that these genes were later tested and were negative, did he? No. Never had it? Not first-hand knowledge. No. He knows that there was this test. Right. He does. So how can he testify without any first-hand knowledge? Well, then defense counsel then goes on and was wanting to ask, well, what are the instructions that you have to follow on this test? And that was cut off. On the presumptive test? Yes. He was asked by defense counsel, now, what are the instructions on the box of this test? And did you follow them? And then he was cut off because the state, again, objected and cut off allowing what there might be in problems with the presumptive test. But where is the damage to your client in light of the fact that Brown's testimony was the actual test and she testified that the pants were negative for blood? The prejudice is allowing the sly implication of this presumptive positive test to say that this was and could be blood and we don't care about what Brown said. Well, defense counsel argued in his closing argument that there was no blood. Yes, Your Honor. And, you know, the jury never heard that there was any blood on anything. Except for the state going out of its way to put this presumptive test and then keep defense counsel from really attacking. Well, couldn't you argue that the state put that in to show a sequence of events as to why they went on? That's what they always say. And that's because they want to put the sly implications for the evidence before the jury. It could have been. There was absolutely no need for them to ever talk about these genes that were taken from where the defendant was and saying that the police thought that there was some blood on it. And so we did this test and we did that test. They could have just never put that evidence on. The reason why they're doing that put in the jury's mind that there might have been blood there. Well, it certainly goes to show that the police did a thorough job, though, that they investigated every avenue that they had, that they took every piece of evidence that they had and sent it to the lab and so forth. And actually, Brown's testimony conclusively rebuts any type of preliminary presumptive test, right? In the minds of attorneys and judges. And jurors. Because why else is the state putting this forward to them that there's this presumptive test? And how do they know that it's just a presumptive test? You know that by allowing cross examination and what that means. If your honors would allow me, I'll talk a little bit about the second issue in the brief that Mr. Bonfell is denied a fair trial by the circuit court improperly sustaining the state's objection to a closing statement by defense counsel. And before you go on, the standard of review for us with respect to the closing is an abuse of discretion, correct? For the broad evidence? No, for the closing. For abuse of discretion. Yes, Your Honor. I would agree with that. But the important principle that you have to look at is that the circuit court sustained the objection to a perfectly valid argument. Defense counsel was saying there in closing argument, there is no gun recovered. Nothing. No gun. And this is the key point. Here's the thing. After two and a half years, the government has not been able to come up with anyone who's seen Juan fire a gun. After two and a half years, there is no evidence that the state came up with that he ever purchased a gun. How is that relevant to the fact that there was a gun used? It doesn't have to be his gun. It could have been my gun. That's simply argument for the state to make in closing argument. But isn't that a burden? Aren't you placing a burden on the state as an additional or two additional elements of the offense, that number one, he had to have been seen firing a gun, and number two, he had to have owned a gun? That's what the state argues in its brief, and I find that to be really hard to follow. I don't understand that at all. The jury was improperly instructed upon the elements of the offense. The offense is not putting any burden upon the state. Oh, I understand. But aren't we limited to argue the relevant evidence with respect to the jury instructions? Well, you are to argue all reasonable inferences from the evidence. And is that a reasonable inference that if he never fired a gun and if he never purchased a gun, he probably never committed this murder? That might not be all that weighty to you, but it could be weighty to the jury. Right. And it doesn't matter. I mean, a lot of things could be weighty to the jury. And so why didn't the court sustain the objection? Isn't the court the gatekeeper of the evidence that comes in so we don't have to follow? He allowed that non-evidence. I mean, he allowed the evidence in. Defense counsel is making this argument. It's a perfectly reasonable argument. What the court should have said at the time when the state objection was denied. That's argument. You make your argument when you want to argue to the jury. It's not something I'm going to get involved in. Why is the court sustaining this objection? Well, then the state could have got up and made an argument like, well, you know, he watched gun smoke and he always told his girlfriend he really loved guns. That wasn't in evidence. So it wasn't in evidence that he never shot a gun or never purchased a gun. I mean, isn't that kind of the same? If he had ever purchased a gun, the state would have put it into evidence. Right. If he had ever shot a gun, they might have been able to put that in evidence into evidence. Right. And if he had ever killed someone before, that would have come in, correct? That possibly could come in. Sure. So then you couldn't argue the negative. He never purchased a gun. Nobody saw him purchase a gun. No one saw him shoot a gun. Nobody ever saw him kill anyone before. Isn't that kind of the same line of argument? Arguing a negative? And why is that bad? I guess it's not bad, but is it? Why is the court interjecting itself and sustaining this perfectly reasonable argument for the jury to consider? And the only reason I can think of. The first part of it, counsel, the first part of it, initial comments that a gun was never found, no problem. No problem. We're not quite sure where the court found some gun problems with that. No, I don't think the court did. The court found a problem in interjecting two additional elements, that there's no evidence. The instruction for this does not say the state must prove that he has previously shot a gun and that he has previously owned a gun. Those are not appropriate instructions. They're not IPI instructions. They're not appropriate. Defense counsel never argues that that is something a burden for the state to prove. That is something for the jury to consider about the weight of the evidence. That's implicit in this argument. So aren't you implying to the jury then, hey, you should take this into consideration when looking, when making your determination that this man never bought a gun and he never fired a gun? That's right. By asking them to put that in their reasoning, you're asking them to make that an additional element of their defense. No, I disagree firmly with that. They're improper. You're saying they're not going to follow their instructions. You're saying they're going to look at the issues instruction and say now that we're going to disregard everything that we've told the court that we're going to follow and not follow those instructions. So what you're saying is as long as the instruction is careful, you can argue just about anything you want. If the instruction is correct. Well, in terms of the reasonable inferences and what the jury should consider, the problem is the court sustained the objection and that causes them to speculate that there was evidence that he had purchased a gun. Well, isn't that the risk your client made your defense attorney makes when arguing improper argument that you're going to. That assumes it's improper. And I do not believe this is an improper argument because, again, the state, if they had ever found somebody to say that he had purchased this gun and it was a 38 or nine millimeter, that would have been evidence. Right. But if the state has somebody say he purchased a gun, but they couldn't say what type of gun it was, that probably wouldn't have come in either. That might not. OK, so then what's the difference? The difference is that the court is sustaining the objection when it should have said this is just argument. You are the judges of fact. You are the people who decide what the facts are. He's taking that away from them, saying subtly and by implication that we know that there is evidence out there that he had a gun and we just can't tell you. You relied on, I think, Barnes for this argument to allow to allow that was Barnes emotion to suppress. I'm sorry, which case? It probably was. I'm not certain about that. Your Honor. Well, anyway, I think they were trying to bring testimony in bars, which I think you can distinguish from your case, because in that case it was a motion to press the court granted. That's right. And then they tried to bring it in. Or they talked about it in closing argument. Right, right. And so certainly Barnes is much more of an egregious case. But the principle is still the same, that it's the sustaining of the objection in this case, which gives the implication that you're hiding something from the jury. You're hiding that he had a gun. And that is the prejudice that we want to put forward to your honor. Consequently, your honors, on any of these issues, we had urged your honors to reverse and remand for a new trial. Thank you. Thank you. Johnson. Good morning. Okay. Is it any warmer in Springfield? Only slightly. It's still a long winter around here. I will start with where counsel left off on argument two. I am in agreement with questions that seem to indicate the understanding that closing arguments, the purpose is to direct the jury to the facts that support the argument you are making. There have to be facts. They can't just counsel cannot just argue random things. There wasn't any testimony, at least as far as I found and maybe you found otherwise, that the defense presented that, well, he can't have killed this person because he doesn't own a gun and he never shot a gun. There was no testimony of that nature, was there? No. You're absolutely correct. And you were correct in asking that when initially defense counsel argued that there was a search of the residence, there was a search of the defendant's Land Rover, and there was no gun found. The state didn't object. We had no basis to. That was supported by the evidence. So when you objected to the questioning of the closing argument of the defense, were you were you giving the indication of the jury by objecting to that, that there in fact was a gun somewhere? No, we were correcting a misstatement of the law. We were correcting an argument that inferred we had additional elements beyond the ones that the jury had been and would be instructed they had to find. And had we allowed that to go unobjected and had they considered that, that would not have resulted in justice. And it would not have been a fair consideration of the evidence that they actually heard. They did not hear because we did not have to prove that he owned a gun, that he had ever possessed a gun, that he had to be in possession of the night of the murder. But we didn't have to prove he purchased it. We didn't have to prove anyone had seen him fire it. There was, again, you know, counsel talks today about subtle hints. That certainly wasn't even subtle. The argument is he doesn't own one and he didn't fire one. Well, respectfully, so what? Question. If you if the argument had been they searched his car, they searched the Land Rover, they didn't find a gun. Proper or improper? That was the argument and it was proper. They searched his home. They didn't find a gun. Proper or improper? Proper. OK, so what is the point at which this argument becomes improper? Those were facts and evidence. It was testified to that we searched the house. We searched the car. This is what we found. This is what we didn't find. Those would be arguments based on facts and evidence. Crossing the line, though, is arguing facts, not in evidence. There was nothing in evidence about whether he had or had not ever purchased a gun or whether any random person had ever seen him fire a gun. It was improper. Counsel relies on people versus Barnes. How do you distinguish distinguish Barnes? Well, in Barnes, you had counsel stand up and I apologize if I get this mistaken, but you had counsel stand up and say the prosecutor knows what happens and he's not letting me tell you. That is a completely different scenario than what happened here. You in this instance, it's almost the reverse. You have defense counsel standing up here saying I'm going to tell you a couple more things that you need to consider. They're totally distinguishable cases. Those are not the facts that we had. The court never never precluded them from arguing that there was no gun. Correct. And we never objected. We did not object to that point. It was relevant. I will say that it is somewhat disingenuine to stand up here and argue that somehow the state's objection allowed the jury to speculate that possibly defendant did own a gun or had been seen firing it, but that we had somehow maliciously acted to keep the jury from hearing that. That's not the fact. What we did was correct a misstatement. And if there was speculation that occurred because of that misstatement of law, it rests on the shoulders of defense counsel and not the state. And it should not be something that should be held against us. Moving to argument three and the cross-examination of the witness. Speer was a crime scene technician. He testified that he did a presumptive test that was positive for the probable presence of blood. He also very clearly testified that based on his positive result, he bagged the evidence and he sent it to the crime lab for further testing. So he was a chain in the link to get it to. Absolutely. Actual testing. Absolutely. Why was it presented in that fashion? Well, there is a desire to be thorough and complete. They did investigate this. They did seize those genes during that search of the residents. And it was a fair piece of evidence to put before the jury to explain everything that was done. Were there any objections to chain of custody that had come up? Were there any issues that had come up in pretrial that this was going to be an issue? No. And there were no objections to when the state attempted to admit this evidence. None. So then based on that, it's followed up. The defense counsel tries to follow up and bring in clearly hearsay testimony based on an out-of-court statement by presumably Brown. We don't know. But by some identified person that subsequently the Speer later learned that his test had been false. And it's important that repeatedly in Speer's testimony he said, no, my test was positive. And, again, this is important. It was a presumptive test. It was positive to the probable presence of blood, not the conclusive presence of blood. But it was the explanation of why it was then forwarded to the state or to the state crime lab. Then you get to Brown's testimony, who is the one testifying as a DNA expert with all of the training and the specialized knowledge that her testing showed there was absolutely no blood on the genes. There's no question that the jury was clearly informed no blood was found on these genes. The presumptive test said probable presence, possible probable presence. The conclusive test said none. The state brought that out on direct. We didn't wait for it to come out on cross. We brought it out on direct. It was confirmed again on cross-examination. And there was no follow-up. So that he, again, he was a link in the chain and also to show the sequence of events as to why he did what he did. Correct. Is there any exception to hearsay that would allow Speer's testimony to come in? No, there isn't. And I know the defendant argues hearsay here should not have been a bar to the testimony of Speer because Brown was coming in later and could verify the testimony that Speer gave. But that's not the proper course of action. The proper course of action is ask the person that knows and cross-examine them. That was not done. There was nothing asked of Brown. And that's why I asked you, is there an exception, i.e., somebody coming in later to confirm what was said? Is there a hearsay exception? Not that would allow Speer to testify to those subjects, no. Are there any other questions on that issue? Okay. Then I will go to the fourth one and the acknowledgment or lack of acknowledgment of a prior statement. The point of the defendant wants to make of Chamberlain is that his statement to the officer would provide him somehow with an alibi. And although he didn't argue it today in his brief, he clearly argued that the statement was going to provide evidence that defendant was in that auto zone in the afternoon of the murder. There is nothing, as I pointed out in my brief, to support that. There was no testimony as to what time, either in the statement to the police officer or in the actual testimony from Mr. Chamberlain. Well, doesn't Mr. Chamberlain in his testimony says he characteristically works between 9 and noon, but yet the testimony or the statement to the officer was 2-01 to 9-09, which is kind of interesting? Well, I believe he said his shifts are typically like 2-10 to 9-something. But he said he always – not always. He typically also comes in around noon. Just like he said he typically would work on a Thursday because he only gets, you know, every five weeks or something is the way his alternate days are off. He was doing his best. I don't think we can fault Mr. Chamberlain because the fact that the trial was happening two and a half years after he observed these events is not his fault. And he was doing his best to be candid and honest about what he did remember and what he didn't. And although it was glossed over, it shouldn't be glossed over. That defense counsel flat out conceded that the testimony about the thermostat was something that was specifically acknowledged. And the fact that he generally spoke to the officers was also generally acknowledged, but nothing else. And defense counsel said, well, I didn't say it would do everything, but that part of it. And the trial court said what part? Defense counsel said the part about purchasing the thermostat. You're right. It doesn't turn the whole conversation into a substantive statement. I think that's probably right. He affirmatively waived this. Why are we revisiting it now? Well, are we setting the stage for ineffective assistance of counsel? If we are, that's a subsequent proceeding. It's not now. But I don't think it should be a basis for ineffective assistance because even if it's found to be error on the trial court's part, as I set out in detail in my brief, there's absolutely no possibility that it would have changed the result of this trial. Because even if you had allowed in substantively the entire statement that he gave to the officer, it did not address the time. It did not address anything specific enough to connect it to, say, I had an alibi for that time. It didn't happen. That's why even if you do find that it was harm, it was not harm beyond a reasonable doubt. Well, whether it was substantive or impeachment, did any of that make a difference with respect to the time of an alibi? No. There was nothing. And let me say this. The jury heard the testimony from the officer. So this isn't a question of what the jury did or didn't hear. It was a question of whether an instruction that certain evidence could be considered substantively should have been given based on an acknowledgement. But yet we all know the trial court wasn't going to go back and start choosing, okay, this inconsistent statement you get to consider as impeachment, but this one you get to consider substantively. That wasn't going to happen. So the fact is the jury heard everything. The jury heard the officer's testimony about the report, and they heard Chamberlain's testimony. Even if you had said the— The date of the cross. Yes. The time never came in. No matter how you slice this, the time was never mentioned because Chamberlain didn't say it in the original report, and he didn't say it in his testimony at trial. There was no alibi to be given from Chamberlain's testimony. The time of the purchase. The time that he was in the store, the time of the purchase, exactly. But now counsel says that if the—I guess the earlier he said my shift from 2 to 9 was accurate, at some point, I mean, he either came in before or if he came in after, there should have been some evidence of chaos on him, blood, whatever. I would respectfully disagree with that. Okay. I mean, we know from the crime scene that the shoe impressions were made in salt that was on a floor mat, and they were made in the snow. There's absolutely no evidence there was blood around those shoe prints. So there isn't evidence that he would have been covered. And first of all, it's not even logical to suggest that if he came in hours after the fact, he wouldn't have gone home and cleaned up. I mean, you're not going to walk around if you are covered in blood and start purchasing thermostats for your Land Rover. You're going to clean up. And we know that he tossed his shoes because we found them in the trash, along with a lot of other items, including a shell casing. And I know we're not necessarily arguing the reasonable doubt, but the shell casing that was found, the expert testified either one of the 38 millimeters that came, sorry, 38 calibers that came out of one defendant's neck and the other one from the seat behind the victim's neck. Sorry. I apologize. Decedents and defendants, and I do apologize. It's not a subtle intention to change you. Out of the victim's neck and out of the car behind where the driver in the victim's car. Either one of those bullets could have been fired from that shell casing. Again, in a bag with the defendant's shoes, with receipts clearly that through surveillance and investigation were tied back to the defendant. It's the state's position there was no error here. There were no abuses of discretion. And then we would ask that you would from the trial court, please. Thank you. Thank you. Your Honor. My question for you is what is the statement of law that defense counsel was commenting upon in his closing argument that the state is saying he was wrong about? Well, weren't you? It was a statement of fact. But, you know, it was a statement that somebody was proposing. We didn't have anybody testified that he had never shot a gun. We didn't have anybody testified that he didn't own a gun. What it looks like is those two issues were being added as things the state had to prove. And I don't believe in a murder that's one of the elements of a murder. And I agree with you on the elements, Your Honor. But I disagree that it's a statement about saying that that is something that is an element that has to be proved. It's a matter of proof that the state has not put forward to show that he really might have had a gun. Did they have to put that forward? Well, they have to demonstrate that he was the person who fired a gun that killed this human being. And so they put in circumstantial evidence to try and prove that, correct? They put in circumstantial evidence to try and prove that. And part of that circumstance is that they can't put him with a gun any time. And that is the circumstantial evidence. So do they need to put him with a gun at any time ever? They certainly don't need to. They have no requirement to. But there is no reason at all why defense counsel can't point that out and not be shut down by the circuit court judge saying objection sustained. All the circuit court judge should have done is say that's argument. State, make your argument. But the argument has to be based upon the evidence or reasonable inferences from the evidence. And there is no evidence of a gun, and that is the reasonable inference, that if the state could have put him with a gun, they would have. Well, certainly, but they didn't have to. They can't find a gun. They can't make up a gun and put it in. So they want to ignore what they're not able to prove now. Well, wait a minute. Didn't they put in that they did a search of the house and there was no gun? They did a search of the car and they found no gun. Didn't they put that in? Yes. So do they have to put in that they went around Rockford? Certainly not. If they don't want to, no. This man with a gun, or if they've ever seen him purchase a gun? Certainly not. So isn't that kind of what you're implying by your argument, that they had the burden to go about and see if anybody had ever seen him with a gun? No. I'm saying that the jury is entitled to take that as one of the circumstances to weigh the proof against my client, Mr. Bronco, in finding him guilty of first-degree murder. And that is one of the circumstances that the state has to put up with because they didn't find any evidence to put on it. And that is the inference that the defense counsel is trying to make. If there had been some evidence, and I'm not saying that you had to produce it, but if there had been some evidence from the defense that, I don't even know what a gun looks like, I couldn't have shot him, then maybe there is some relevance to they haven't shown that he ever owned one or he ever fired one. But there wasn't any of that evidence, was there? No. The defendant did not testify. He really does not speak English well. He did not want to testify. Well, I'm not saying he should have, but I'm looking for evidence. That is not his burden to put forward. Right. The state has the burden, and they have to accept the circumstances of their case. And the argument, that was a closing argument. The court interfered with that closing argument, sustained it. And it's that sustaining of the argument that really comes into the problem. Consequently, Your Honors, unless you have some other questions, I would just urge Your Honors to reverse and remand for a new trial. Thank you. Justice Smith. Safe travels. Yes, safe travels. And thank you very much for your argument today. We will take the matter under advisement. A decision will be made in due course. We are going to stand in recess to get ready for our last case. Thank you.